## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------- x
                                                                   :

Travelers United, Inc.,
2833 Alabama Ave SE #30736
Washington, D.C., 20020,
on behalf of itself and the putative classes,

                Plaintiff,

                    v.

Hyatt Hotels Corporation,                        Case No. _____
150 North Riverside Plaza
Chicago, IL 60606,

Hyatt Corporation
150 North Riverside Plaza
Chicago, IL 60606, and

Hyatt Franchising, LLC,
150 North Riverside Plaza
Chicago, IL 60606

                Defendants.

------------------------------------------------------------- x

## DEFENDANTS HYATT HOTELS CORPORATION, HYATT CORPORATION, AND HYATT FRANCHISING, LLC'S NOTICE OF REMOVAL

**TO THE CLERK OF THE COURT:**

      PLEASE TAKE NOTICE THAT Defendants Hyatt Hotels Corporation, Hyatt Corporation, and Hyatt Franchising, LLC hereby jointly remove this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d)(2).

1

## I.    TIMELINESS OF REMOVAL

1.    Plaintiff Travelers United, Inc. ("Plaintiff") filed the Complaint in this action in the Superior Court of the District of Columbia, Civil Division, Case No. 2023-CAB-005095, on August 17, 2023.  *See* Ex. A ("Compl.") The only defendants are Hyatt Hotels Corporation, Hyatt Corporation, and Hyatt Franchising, LLC (together, "Defendants"). Defendants were each served with the Complaint on August 22, 2023, *see* Exs. B, C, D, making the deadline for removal September 21, 2023.

2.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the remainder of the Superior Court case file (including all documents other than the Complaint and the Proof of Service) is attached as Exhibit E and incorporated by reference herein.

3.    Defendants have not filed any pleadings in the Superior Court. Defendants appeared in the Superior Court for the sole purpose of filing a stipulation extending the 21-day deadline for Defendants to respond to the Complaint. Defendants secured the extension so that they would have time to assess the Complaint and grounds for removal before the deadline to submit a substantive response to the Complaint in the Superior Court.

4.    Defendants all join in and consent to the removal of this action. *See* 28 U.S.C. §§ 1446(b)(2), 1453.

## II.    SUMMARY OF ALLEGATIONS[1]

5.    Plaintiff alleges that Hyatt Hotels Corporation "is a Delaware corporation that is headquartered in Chicago, Illinois." Compl. ¶ 16.

---

[1] Defendants summarize the allegations of the Complaint relevant to removal. Defendants accept the truth of the allegations of the Complaint solely for purposes of removal, and, except as expressly stated herein, nothing in this notice of removal should be construed as an admission by Defendants of any allegation of the Complaint.

6. Plaintiff alleges that Hyatt Corporation "is a subsidiary of Hyatt Hotels Corporation" that "is a Delaware corporation … headquartered in Chicago, Illinois." *Id.* ¶ 17.

7. Plaintiff alleges that Hyatt Franchising, LLC "is a subsidiary of Hyatt Hotels Corporation" that "is a Delaware limited liability company . . . headquartered in Chicago, Illinois." *Id.* ¶ 18.

8. Plaintiff alleges that Plaintiff itself "is a nonprofit public interest organization," a "Delaware exempt corporation which is registered as a foreign corporation in the District of Columbia," and "based in Washington, D.C. and Virginia." *Id.* ¶ 12.

9. Plaintiff alleges that the way "Hyatt"[2] discloses, during the online room booking process, certain kinds of fees (destination and resort fees) charged at certain Hyatt properties has resulted in at least tens of millions of dollars in damages to consumers every year since at least 2020. *Id.* ¶ 1. According to Plaintiff, "[r]ather than disclosing the full cost of its hotel rooms upfront," Hyatt adds on destination fees, resort fees, and other fees that Plaintiff contends are really part of the daily room rate later in the purchase process, "after consumers have already expended time and effort selecting the product or service and have already committed to a particular purchase." *Id*. ¶¶ 2 & 23. Plaintiff contends that, because of this alleged practice, consumers could not reserve a room for the advertised Hyatt room rate without incurring the subject fees, nor compare costs and benefits of a Hyatt room to other rooms when searching for hotels. *Id.* ¶ 67. Plaintiff alleges that this alleged practice violates the provisions of the District of Columbia Consumer Protection Procedures Act ("DC Act") that make it unlawful for businesses to (1) "advertise or offer goods or services without the intent to sell them or without the intent to sell

---

[2] Except as expressly noted, Plaintiff disregards the corporate separateness of Defendants and alleges against them collectively as "Hyatt."

3

them as advertised or offered" and/or (2) "make false or misleading representations of fact concerning . . . the price in comparison to [the] price of [a] competitor['s]." D.C. Code §§ 28-3904(h), (j).

10. Plaintiff alleges that "Hyatt began including [the subject fees] in the advertised prices for its hotel room in August 2023." Compl. ¶ 45, n.25. On this basis, Plaintiff admits that "[f]rom the onset of the search process, consumers on Hyatt [*sic*] today are thus able to compare accurate total price across hotels in order to make an informed choice as to which room and company is most cost effective for the particular consumer." *Id.* ¶ 73. Nevertheless, in an apparent attempt to salvage some basis for injunctive relief, Plaintiff asserts that Hyatt is still violating the DC Act because, if a consumer clicks on the "Price Details" link during the booking process, the subject fees are listed in the "Taxes & Fees" section of the price breakdown. According to Plaintiff, listing the fees under "Taxes & Fees" could mislead consumers into believing the fees are mandatory government charges. *Id.* ¶¶ 66, 72-74.

11. Based on these allegations, Plaintiff seeks to assert a single claim against Defendants for violation of the DC Act. *Id.* ¶¶ 98-110. Plaintiff asserts this claim on behalf of itself and on behalf of the following two putative classes pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *Id.* ¶¶ 83-85.

- **National Class**: "All individuals in the United States who booked a room at a Hyatt hotel within the District of Columbia for personal use and paid a resort, destination, and/or other similar fee to Hyatt." *Id.* ¶ 84.

- **District Class**: "All residents of the District of Columbia who booked a room at a Hyatt hotel within the United States for personal use and paid a resort, destination, and/or other similar fee to Hyatt." *Id.* ¶ 85.

4

12. Plaintiff alleges "on information and belief" that "there are tens of thousands or potentially millions of members of the Classes." *Id.* ¶ 91.

13. The relief sought in the Complaint includes, without limitation, injunctive relief; actual damages; treble damages or statutory damages of $1,500 per violation, whichever is greater; punitive damages; and Plaintiff's reasonable attorney's fees and costs. *Id.* ¶ 111.

### III.   Grounds For Removal

14. CAFA provides federal subject matter jurisdiction over putative class actions in which: (a) there are at least 100 putative class members; (b) any plaintiff (including putative class members) is a citizen of a different state than any defendant; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5). As set forth below, this action meets all of CAFA's requirements and, therefore, is properly removed.

#### A.   There Are At Least 100 Putative Class Members

15. As noted above, for CAFA-based subject matter jurisdiction, there must be at least 100 members of "all proposed plaintiff classes in the aggregate." *Id.* § 1332(d)(5)(B).

16. Here, Plaintiff proposes two putative classes: the proposed "National Class" and the "District Class." Compl. ¶¶ 84-85. Given the nature of the allegations, it is self-evident that the number of putative class members exceeds 100. But even if it were not, Plaintiff alleges that "there are tens of thousands or potentially millions of members of the Classes." *Id.* ¶ 91. Even without more, these allegations support a reasonable inference that there are at least 100 putative class members in the aggregate.[3]

---

[3] In addition to denying any and all liability, Defendants deny that either of Plaintiff's proposed classes could ever properly be certified.

5

17. Defendants' business records (and common sense) also conclusively show that Plaintiff's proposed classes comprise more than 100 putative class members in the aggregate. This is clear even limiting the inquiry to the only Hyatt property specifically identified in the Complaint: the Grand Hyatt in Washington, DC ("Grand Hyatt Washington"). *Id.* ¶ 72. The Grand Hyatt Washington has 897 rooms, and there were more than 37,000 non-convention, destination fee-generating bookings at that property in 2022 alone. Ex. F, Declaration of Alissa Stone ("Stone Decl.") ¶¶ 5-6.

18. As defined in the Complaint, the putative classes are limited to persons who "paid a resort, destination, and/or other similar fee to Hyatt" in connection with booking a hotel room "for personal use." Compl. ¶¶ 84-85. Plaintiff does not define "personal use," but Defendants reasonably construe "personal use" to mean for exclusively non-business purposes. Defendants cannot ascertain from their business records the extent to which the 37,000 non-convention, destination fee-generating purposes were for personal use—indeed, any such determination would require precisely the sort of individualized inquiry that would make class adjudication improper. Ex. F, Stone Decl. ¶ 6. But for purposes of removal, even if only 10% of the more than 37,000 non-convention, destination fee-generating bookings were for personal use, there would be at least 3,700 "personal use" bookings at The Grand Hyatt Washington in 2022 alone. *Id*. Defendants submit that the Court can reasonably infer that those 3,700 bookings were made by not fewer than 100 putative class members.

19. For all these reasons, there are at least 100 putative class members in the aggregate and the requirements of 28 U.S.C. § 1332(d)(5)(B) are met.

**B.   There Is Minimal Diversity of Citizenship**

20. CAFA requires only minimal diversity, providing that "[t]he district courts shall have original jurisdiction of any civil action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Here, as explained below, CAFA's minimum diversity requirement is met because Defendants are all citizens of Delaware and Illinois; the "District Class" consists, by definition, of citizens of the District of Columbia; and Plaintiff's proposed "National Class" includes putative class members who are geographically dispersed across the United States and, thus, necessarily includes putative class members who are citizens of states other than Delaware and Illinois. Compl. ¶¶ 84-85.

21. For diversity purposes, a person is a citizen of the state in which that person is domiciled. *Newman–Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 828 (1989). A person is domiciled where that person resides with the intention to remain or to which the person intends to return. *Core VCT PLC v. Hensley*, 89 F. Supp. 3d 104, 111 & n.3 (D.D.C. 2015). Where a person lives is taken to be his or her domicile unless and until facts adduced establish the contrary. *Weitknecht v. D.C.*, 195 F.2d 570, 571 (D.C. Cir. 1952) (citing *D.C. v. Murphy*, 314 U.S. 441, 455 (1941)). Even assuming otherwise, in the absence of a factual challenge, a removing defendant need only allege the citizenship of the plaintiff and the purported class members based on information and belief. *See Ehrman v. Cox Communications, Inc.*, 934 F.3d 1223, 1228 (9th Cir. 2019).

22. Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place

where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

23. Here, Plaintiff alleges that Hyatt Hotels Corporation "is a Delaware corporation that is headquartered in Chicago, Illinois." Compl. ¶ 16. Defendants have confirmed its citizenship. Ex. G, Declaration of Christina Urbanski ("Urbanski Decl.") ¶ 4(a). Accordingly, Hyatt Hotels Corporation is a citizen only of Illinois and Delaware, not the District of Columbia.

24. Plaintiff alleges in the Complaint that Hyatt Corporation "is a Delaware corporation … headquartered in Chicago, Illinois." Compl. ¶ 17. Defendants have confirmed its citizenship. Ex. G, Urbanski Decl. ¶ 4(b). Accordingly, Hyatt Corporation is a citizen only of Illinois and Delaware, not the District of Columbia.

25. Plaintiff alleges in the Complaint that Hyatt Franchising LLC "is a subsidiary of Hyatt Hotels Corporation" and "a Delaware limited liability company that is headquartered in Chicago, Illinois." Compl. ¶ 18. As stated in the attached declaration, Hyatt Franchising LLC is Delaware limited liability company with its headquarters in Chicago, Illinois, and it is a wholly-owned subsidiary of its sole member, Hyatt Hotels Corporation. Ex. G, Urbanski Decl. ¶ 4(c). Because an LLC is a citizen of all states of which its members are citizens, Hyatt Franchising LLC (like Hyatt Hotels Corporation) is a citizen of Illinois and Delaware, not the District of Columbia.[4] *See Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 178 (D.D.C. 2003).

26. Although Plaintiff alleges that it is a Delaware exempt corporation "based in Washington, DC and Virginia," Compl. ¶ 12, CAFA's minimum diversity requirement is met based on either (and indeed both) of Plaintiff's proposed classes. With respect to the "District

---

[4] Moreover, because no Defendant is a citizen of the District of Columbia, the state in which this action was filed, neither the "home state" nor "local controversy" exceptions to CAFA removal jurisdiction applies.

Class," Plaintiff alleges that the putative class members are residents of the District of Columbia. Compl. ¶ 85. This allegation supports (at a bare minimum) a reasonable inference that the putative "District Class" members are overwhelmingly citizens of the District of Columbia, not (unlike Defendants) citizens of Illinois or Delaware. *See* 28 U.S.C. § 1332(d)(2)(A); *Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F. Supp. 3d 88, 95 (D.D.C. 2015) (courts can draw reasonable inferences about class members citizenship from evidence in the record); *see also Chem. Toxin Working Grp. Inc. v. Johnson & Johnson*, No. 1:22-CV-1259-RCL, 2023 WL 2631492, at *3 (D.D.C. Mar. 24, 2023) (finding minimal diversity in a case involving a class of District of Columbia consumers against a corporation that was not a citizen of the District of Columbia); *Ehrman*, 934 F.3d at 1228 n.2 ("Indeed, the district court acknowledged that it would be 'inconceivable' that neither [plaintiff] nor any of the 832,000 purported class members, all of whom subscribed to residential internet service in California, were citizens of California.").

27. There is also minimum diversity with respect to Plaintiff's proposed "National Class," which consists of putative class members who necessarily are geographically dispersed across the United States. Compl. ¶ 84. Plaintiff's proposed "National Class" supports (again, at a bare minimum) a reasonable inference that the putative "National Class" members are domiciled across most, if not all, of the fifty states and, thus, that at least one putative class member is a citizen of a state other than Illinois or Delaware.

28. For these reasons, CAFA's minimum diversity requirement is met here.

**C.     The Amount in Controversy Exceeds $5,000,000**

29. CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest or costs. 28 U.S.C. § 1332(d)(2). The claims of the individual putative class members may be aggregated to determine the amount in controversy. *See id.* § 1332(d)(6).

9

30. A "defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015). The "defendant need not 'prove [CAFA's requirements] beyond all doubt or to banish all uncertainty about [them].'" *Chem. Toxin Working Grp. Inc.*, 2023 WL 2631492, at *2 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)). The defendant also need not prove the amount in controversy to a legal certainty. *Sloan v. Soul Circus, Inc.*, No. CV 15-01389 (RC), 2015 WL 9272838, at *5 (D.D.C. Dec. 18, 2015) (citing *Doe*, 118 F. Supp. 3d at 93). "While the defendant has the burden of proof '... [that] does not mean that [it] cannot ask the court to make common-sense inferences.'" *Chem. Toxin Working Grp. Inc.*, 2023 WL 2631492, at *2 (quoting *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015)). To remove under CAFA, as the U.S. Supreme Court has made clear, "evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

31. Defendants deny any wrongdoing and, therefore, deny any liability on any claim or theory asserted in the Complaint, whether by Plaintiff individually or on behalf of any putative class. Defendants accept Plaintiff's allegations as true solely for purposes of removal. *See, e.g.*, *McMullen v. Synchrony Bank*, 82 F. Supp. 3d 133, 140 (D.D.C. 2015) (accepting plaintiff's allegations about the amount in controversy as true solely for purposes of removal). Defendants acknowledge that Plaintiff seeks a broad range of relief, including injunctive relief; actual damages; and treble damages or statutory damages of $1,500 per violation, *whichever is greater*. Compl. ¶ 111. With respect to damages, then, Plaintiff seeks at least $1,500 for each purported violation. *Id.* ¶¶ 108, 111. Plaintiff alleges that "each night that Hyatt charged [the subject

10

destination or resort fees] constitutes a violation of the [DC Act]." *Id.* ¶ 109. Defendants deny that a violation of the DC Act should be determined on a per night basis (as opposed to a per booking basis or some other basis).

32.  As noted above in Section III.A, there were at least 37,000 non-convention destination fee-generating bookings at The Grand Hyatt Washington in 2022 alone; and even conservatively assuming that only 10% of those bookings were for exclusively personal use, that would result in at least 3,700 personal use, destination fee-generating bookings in 2022 at that property alone. Ex. F, Stone Decl. ¶ 6. Multiplying $1,500 (Plaintiff's minimum claimed damages per violation) by 3,700 bookings from The Grand Hyatt Washington in 2022 equals $5,550,000 in claimed statutory damages, which is more than enough to meet CAFA's "in excess of $5,000,000" amount-in-controversy requirement. (The amount in controversy would obviously be greater if the quantum of claimed statutory damages were calculated on a per-night basis.) This figure also does not take into account the other Hyatt properties across the United States that have charged resort or destination fees to putative class members during the putative class period, *id.* ¶ 7, or that the putative class period is not limited to 2022. *See Cannon v. Wells Fargo Bank, N.A.,* 908 F. Supp. 2d 110, 113-14 (D.D.C. 2012) (explaining that "[t]en violations of the [DC Act] with [statutory] damages of $1,500 per violation for each of the 738 members of the class amounts to a total of $11,070,000—more than double the amount in controversy necessary"); *McMullen*, 82 F. Supp. 3d at 140; *see also Chem. Toxin Working Grp. Inc.*, 2023 WL 2631492, at *3.

33.  In short, while Defendants deny any wrongdoing, any liability to Plaintiff or any putative class member, and that any putative class can properly be certified, the amount in controversy plainly exceeds $5,000,000, exclusive of interest and costs, so CAFA's amount-in-controversy requirement is met.

11

## IV. VENUE

34. The U.S. District Court for the District of Columbia is the federal judicial district embracing the Superior Court of the District of Columbia. 28 U.S.C. § 88. Because this action was originally filed in the Superior Court of the District of Columbia, it is properly removed to this District.[5] *See* 28 U.S.C. § 1441(a); Civil L.R. 3-2(f).

## V. NOTICE

35. Upon filing this Notice of Removal, Defendants will promptly (1) provide written notice of same to Plaintiff and (2) file a copy of this Notice of Removal with the Clerk of the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1446(d).

36. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

## VI. CONCLUSION

37. For the foregoing reasons, which are supported by the allegations of the Complaint, the declarations submitted in support of this Notice of Removal, CAFA, Rule 23, and applicable case law, Defendants respectfully submit that this action is properly removed to this Court and, on that basis, request that this Court proceed as if this case had originally been filed in this Court. If the Court has any question about the propriety of this removal, Defendants respectfully reserve the right and request the opportunity to present briefing, additional evidence, and oral argument in support of their position that this case is properly removed and that there is no basis for remand.

---

[5] Defendants reserve the right to promptly seek transfer of this action from this District to the U.S. District Court for the Northern District of Illinois (where all Defendants are headquartered) or otherwise object to venue in this District with respect to putative class claims, including because, under the Terms & Conditions of the Hyatt.com website, putative class members who booked their rooms using Hyatt.com agreed to litigate any claims arising from their use of Hyatt.com in the State of Illinois.

Respectfully submitted,

Date:  September 21, 2023  */s/  Lindsay C. Harrison*
Lindsay C. Harrison (DC Bar No. 977407)
**JENNER & BLOCK LLP**
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Ph: 202.639.6000
Email: lharrison@jenner.com

13