**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| TRAVELERS UNITED, INC., |
| Plaintiff, |
| v. |
| HYATT HOTELS CORPORATION, *et al.*, |
| Defendants. |

Civil Action No. 23-2776 (CKK)

**MEMORANDUM OPINION**
(January 3, 2025)

Travelers United, Inc., a nonprofit public interest organization, filed this putative class action lawsuit in the Superior Court of the District of Columbia, alleging that Hyatt Hotels Corporation, Hyatt Corporation, and Hyatt Franchising, LLC (collectively, "Hyatt" or "the Hyatt Defendants") violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901 to 28-3913, by charging so-called "junk fees" to consumers. *See* Compl., ECF No. 1-1, ¶¶ 1–9. Hyatt removed the case to this Court, invoking this Court's jurisdiction under a provision of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal, ECF No. 1.

Now pending before the Court is the Plaintiff's [10] Motion to Remand to the Superior Court of the District of Columbia, in which the Plaintiff argues that this case should be remanded because Travelers United lacks standing to proceed with its claims in federal court. *See* Mem. in Support of Pl.'s Mot. to Remand ("Pl.'s Mem."), ECF No. 10-1, at 5–11. Travelers United also requests an award of attorney's fees and costs incurred because of the removal. *See id.* at 11–12. Hyatt opposes Travelers United's Motion and requests jurisdictional discovery to support its

1

arguments that Travelers United has standing.  *See* Hyatt Defs.' Opp'n to Pl.'s Mot. to Remand ("Defs.' Opp'n"), ECF No. 12, at 8–18.

Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT** the Motion to Remand, **DENY** Hyatt's requests for jurisdictional discovery, and **DENY** Travelers United's request for attorney's fees and costs.  This case shall be remanded to the D.C. Superior Court.

## I. BACKGROUND

The pending Motion comes before the Court in an unusual procedural posture.  Travelers United, the Plaintiff, denies that it has suffered any concrete injury and argues that it therefore lacks standing to pursue its claims in federal court.  *See* Pl.'s Mem. at 5–11.  The Hyatt Defendants take the opposite view, insisting that Travelers United *has* alleged a concrete injury and that the case should go forward in this Court.  *See* Def.'s Opp'n at 8–17.  In this posture, the usual rules of federal standing apply, but "the roles are reversed and the burden flips" so that the *defendants* bear the burden of establishing that the plaintiff has standing.  *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020).  To provide context for this unusual posture, the Court shall begin by providing a brief overview of the unusual statute from which this case arises.  The Court will then turn to the plaintiff's allegations and the procedural history of this case.

---

[1] The Court's consideration has focused on the following documents:
- the Defendants' Notice of Removal, ECF No. 1;
- the Plaintiff's Complaint, ECF No. 1-1;
- the Plaintiff's Memorandum in Support of its Motion to Remand to the Superior Court of the District of Columbia, ECF No. 10-1;
- the Defendants' Opposition to Plaintiff's Motion to Remand, ECF No. 12;
- the Plaintiff's Reply in Support of its Motion to Remand ("Pl.'s Reply"), ECF No. 13;
- the Plaintiff's two Notices of Supplemental Authority ("Pl.'s Notice I" and "II"), ECF Nos. 15, 17;
- the Defendants' Responses to those notices ("Def's Resp. I" and "II"), ECF Nos. 16, 18; and
- the attachments to each of those submissions.

In an exercise of its discretion, the Court finds that holding oral argument on the pending Motion is not necessary to the resolution of the issues before the Court.  *See* LCvR 7(f).

A.      The District of Columbia Consumer Protection Procedures Act ("CPPA")

The CPPA, a D.C. consumer protection statute, prohibits any "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."  D.C. Code § 28-3904.  It is a violation of this statute to "misrepresent," "fail to state," or "use innuendo or ambiguity as to" any "material fact" in trade if doing so is misleading.  *Id.* § 28-3904(e), (f), (f-1).  It is also a violation to "advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered."  *Id.* § 28-3904(h).  And it is a violation to "make false or misleading representations of fact concerning . . . price in comparison to price of competitors."  *Id.* § 28-3904(j).

Like many consumer protection statutes, the CPPA authorizes private civil actions to enforce its provisions.  *See* D.C. Code § 28-3905(k).  Available remedies in private suits include "[t]reble damages, or $1,500 per violation, whichever is greater, payable to the consumer."  *Id.* § 28-3905(k)(2).  Successful plaintiffs may also be entitled to attorney's fees, punitive damages, and injunctive relief against the unfair or deceptive practice.  *Id.*

The unusual feature of the CPPA at play in this case is that some private plaintiffs may bring suit under the CPPA without alleging any injury to themselves.  Specifically, under a private-right-of-action provision of the CPPA that the D.C. Council adopted in 2013, "a public interest organization" may bring a civil action "on behalf of the interests of a consumer or a class of consumers . . . seeking relief from the use by any person of a trade practice in violation of a law of the District," whenever three basic conditions are satisfied.  *Id.* § 28-3905(k)(1)(D); *see* Consumer Protection Act of 2012, D.C. Act 19-647 § 2(b)(3) (Jan. 25, 2013).  First, the organization must be "a nonprofit 'organized and operating,' at least in part, 'for the purpose of promoting interests or rights of consumers.' "  *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 185 (D.C. 2021) (quoting D.C. Code § 28-3901(a)(15)).  Second, "the consumer or

class of consumers must be capable of bringing suit in their own right." *Id.* at 183 (citing D.C. Code § 28-3905(k)(1)(D)).  Third, the organization "must have a sufficient nexus to the interests involved of the consumer or class . . . to adequately represent those interests." *Id.* (alteration in original) (quoting D.C. Code § 28-3905(k)(1)(D)).  If these three conditions are satisfied, the plaintiff organization may proceed with its case in D.C. Superior Court, even if the organization itself has not suffered any injury.  *See id.*

In its report recommending that this unusual private-right-of-action provision be adopted as an amendment to the CPPA, the D.C. Council's Committee on Public Services and Consumer Affairs explained that the relevant part of the amendment was intended to give plaintiff public interest organizations "the full extent of standing as may be recognized by the District of Columbia courts."  *See* Report on Bill 19-0581, D.C. Council Comm. On Pub. Servs. & Cons. Aff., at 6 (Nov. 28, 2012) [https://perma.cc/X4FT-MSU2].  The Committee went on to state that the provision at issue in this case:

> is intended to explicitly and unequivocally authorize the court to find that a public interest organization has standing beyond . . . what would be afforded under a narrow reading of prior DC court decisions, and beyond what would be afforded in a federal case under a narrow reading of prior federal court decisions on federal standing.

*Id.*

Consistent with that express intention, the D.C. Court of Appeals has held that the CPPA does not require that an organization or its members have suffered any injury at all for the organization to bring a civil action in Superior Court under the private-right-of-action provision at issue in this case.  *See Animal Legal Def. Fund*, 258 A.3d at 183–84.  Instead, it has concluded that "the [D.C.] Council intended public interest organizations bringing suit under [the relevant provision, D.C. Code § 28-3905](k)(1)(D)[,] to be free from any requirement to demonstrate their

own Article III standing" to sue in D.C. courts. *Id.* at 184; *see also Ctr. for Inquiry Inc. v. Walmart, Inc.*, 283 A.3d 109, 116 n.4 (D.C. 2022) ("If an entity . . . meets the CPPA statutory test governing public interest organization standing, it has [statutory] standing to sue [in D.C. courts] 'without regard to whether it also satisfies traditional Article III standing requirements.' " (quoting *id.* at 183)).

### B.    Travelers United and Its Claims

Travelers United is "a nonprofit public interest organization" with a mission "to improve and enhance travel for consumers." Compl. ¶¶ 12–13. The organization is incorporated in Delaware, registered as a foreign corporation in D.C., and "based in Washington, D.C. and Virginia." *Id.* ¶ 12.

In this action, Travelers United alleges that some of the ways that Hyatt advertises and charges fees to customers who book its hotel rooms are unfair or deceptive practices prohibited by the CPPA. *See* Compl. ¶¶ 46–75, 105–07. Specifically, Travelers United challenges Hyatt's former practice of charging "resort" and "destination" fees that were not advertised as part of the regular nightly rate for a hotel room. *See id.* ¶¶ 105–07. Travelers United labels these mandatory charges "junk fees." *See id.* Travelers United alleges that Hyatt's practice of charging these fees amounted to unfair "partitioned pricing" because consumers were shown "the actual total price" of a hotel room only "toward the end of the purchase," hindering their ability to "compare the costs and benefits of a given Hyatt hotel" with those of other available options. *See id.* ¶¶ 57–58. Travelers United further alleges that Hyatt continues to mislead consumers by grouping "resort" and "destination" fees under a "Taxes & Fees" heading in an itemized list of room charges presented at the end of the purchase process. *Id.* ¶¶ 58–59. It alleges that this grouping gives consumers the false impression that the "change in price" from the additional fees "may have resulted from mandatory government charges." *Id.* ¶ 59.

Travelers United contends that these practices violate the CPPA in two ways. First, it alleges that by advertising per-night prices for hotel rooms that did not include mandatory "resort" or "destination" fees, Hyatt unlawfully advertised or offered its rooms "without the intent to sell them as advertised or offered," in violation of D.C. Code § 28-3904(h). Compl. ¶ 105. Second, it alleges that because Hyatt sometimes failed to include mandatory fees in the advertised per-night price of its hotel rooms, some of its representations about those per-night prices were false or misleading, in violation of D.C. Code § 28-3904(e), (f), (f-1), and (j). Compl. ¶ 106.

Travelers United proposes to represent two classes of consumers in this action: a "National Class" consisting of individuals in the United States who booked a room at a Hyatt hotel in D.C. for personal use and paid one of the fees at issue, and a "District Class" consisting of D.C. residents who booked a room at a Hyatt hotel anywhere in the U.S. for personal use and paid one of those same fees. *Id.* ¶¶ 84–85. Travelers United alleges that Hyatt's fee practices violated "each [c]lass member['s] individual statutory right to truthful information from Hyatt about the actual price of nightly room rates purchased, leased, or received in the District of Columbia." *Id.* ¶ 87. It further alleges that Hyatt's practices "have resulted in actual injury and harm to the [c]lass members." *Id.* ¶ 88. Specifically, it alleges that each class member suffered harm "in the amount of the [challenged fees] which were absent from the advertised price and which they paid as a result of" Hyatt's fee practices. *Id.*

In its Complaint, Travelers United asserts that its case against Hyatt satisfies the requirements for certification as a class action under D.C. Rule of Civil Procedure 23. Compl. ¶ 83. The class certification requirements in D.C. Rule 23 are facially identical to their federal counterparts. *Compare* D.C. Super. Ct. R. Civ. P. 23(a), *with* Fed. R. Civ. P. 23(a). For a class to be certified, (1) the class must be "so numerous that joinder of all members is impracticable,"

(2) there must be "questions of law or fact common to the class," (3) the "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative party must "fairly and adequately represent the interests of the class." D.C. Super. Ct. R. Civ. P. 23(a). As relevant to the pending Motion, Travelers United alleges that the third of these requirements—typicality—is satisfied because its own claims are "typical, if not identical, to the claims that could be asserted by all members of the [two putative classes]." *Id.* ¶ 94.

Travelers United seeks several remedies on its own behalf and on behalf of the putative classes. *See* Compl. ¶ 111. It seeks a permanent injunction barring Hyatt from "advertising rates for hotel rooms that exclude mandatory resort, destination, and/or other similar fees," and from "partitioning advertised hotel room prices from mandatory resort, destination, and/or other similar fees," including by "placing these mandatory fees under a 'Taxes & Fees' heading at checkout." *Id.* ¶ 111(a)–(b). On behalf of the putative class members, it seeks actual damages; treble damages or statutory damages of $1,500 per violation, whichever is greater; and punitive damages. *Id.* ¶ 111(c)–(e). It seeks "reasonable attorneys' fees and costs" for itself and for the putative class members. *Id.* ¶ 111(f). And it seeks "any additional relief as may be necessary to restore to the [c]lass members money which may have been acquired by means of Hyatt's unlawful trade practices" or that the Court may find "necessary and proper." *Id.* ¶ 111(g)–(h).

C.    **Procedural History**

Travelers United filed its Complaint in D.C. Superior Court on August 17, 2023. Notice of Removal, ECF No. 1, ¶ 1; *see* Compl. at 25. Travelers United served each of the Hyatt Defendants on August 22, 2023. Notice of Removal ¶ 1; *see* Notice of Removal Exs. B–D, ECF Nos. 1-2 to 1-4. The Hyatt Defendants then jointly filed a timely Notice of Removal in this Court on September 21, 2023. *See* Notice of Removal at 13; *see also* 28 U.S.C. § 1446(b)(2)(B).

The Hyatt Defendants' Notice of Removal invoked this Court's jurisdiction under CAFA, which provides that federal district courts have original jurisdiction in cases in which at least one member of a class of plaintiffs is a citizen of a different state than any defendant, there are at least 100 putative class members, and the total amount in controversy exceeds "$5,000,000, exclusive of interest and costs."  *See* Notice of Removal ¶ 14; 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6).

In their Notice of Removal, the Hyatt Defendants did not address whether Travelers United has standing to pursue this case in federal court.  *See generally* Notice of Removal.  The only description of Travelers United or its organizational structure in the Notice of Removal is a restatement of Travelers United's own allegation that it "is a nonprofit public interest organization" that is incorporated in Delaware, registered as a foreign corporation in D.C., and "based in Washington, D.C. and Virginia."  Notice of Removal ¶ 8 (quoting Compl. ¶ 12).

Shortly after removal, this Court ordered the Hyatt Defendants to file an Answer.  Minute Order (Sept. 22, 2023).  The Court then granted a consent motion to stay the deadline for the Hyatt Defendants' Answer so that the parties could first litigate motions to remand or transfer this case. *See* Minute Order (Sept. 29, 2023); Consent Mot. to Defer Time to Answer, ECF No. 4.

Travelers United then filed a Motion to Remand this case to D.C. Superior Court, arguing that it lacks standing to proceed with its claims in federal court.  *See* Pl.'s Mem. at 5–11.  In its Motion, Travelers United requests an award of fees and costs it incurred because of the removal. *See id.* at 11–12.  Hyatt opposes the Motion to Remand, arguing that this case should proceed in federal court because Travelers United has both organizational standing and associational standing to pursue its claims.  *See* Def.'s Opp'n at 8–17.  Hyatt also requests jurisdictional discovery to substantiate its arguments about Travelers United's standing.  *See id.* at 12 n.7, 15 n.8, 17 n.11.

Finally, after briefing on the Motion to Remand was complete, Travelers United filed two Notices of Supplemental Authority, to which Hyatt responded. *See* Pl.'s Not. I (Apr. 4, 2024); Defs.' Resp. I (Apr. 9, 2024); Pl.'s Not. II (June 18, 2024); Def.'s Resp. II (June 21, 2024).

Travelers United's Motion to Remand is now ripe for decision.[2]

## II. LEGAL STANDARDS

### A. Remand

Federal courts are courts of limited jurisdiction. *See Murthy v. Missouri*, 603 U.S. 43, 56–57 (2024); U.S. Const. art. III, § 2, cl. 1. Consistent with that limitation, if a federal district court lacks subject-matter jurisdiction over a case that a party has removed from the Superior Court of the District of Columbia, the federal court must remand the case back to the Superior Court. *See* 28 U.S.C. §§ 1447(c), 1451; *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002); *see also Plazzi v. FedEx Ground Package Sys., Inc.*, 52 F.4th 1, 7–8 (1st Cir. 2022) (collecting cases). The party that removed the action "bears the burden of proving that jurisdiction exists in federal court." *Steele v. Salb*, 681 F. Supp. 2d 34, 36 (D.D.C. 2010) (CKK) (quoting *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) (JDB)); *Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40, 44 (D.D.C. 2020) (DLF). However, when—as in this case—a party invokes federal jurisdiction under CAFA, there is no presumption in favor of remand. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Toxin Free USA*, 507 F. Supp. 3d at 44. And although remand orders are generally not appealable, under CAFA, a United States Court of Appeals may accept an appeal from an order granting or denying a motion to remand a putative class action. 28 U.S.C. § 1453(c)(1); *cf.* 28 U.S.C. § 1447(d).

---

[2] Hyatt has also filed a Motion to Transfer this case to the Northern District of Illinois, which this Court held in abeyance pending the resolution of the Motion to Remand. *See* Defs.' Mot. to Transfer, ECF No. 11; Minute Order (Oct. 22, 2023). Because the Court concludes that Travelers United lacks standing to proceed in federal court and the case must be remanded to the D.C. Superior Court, the Order accompanying this Memorandum Opinion denies the Motion to Transfer as moot.

B.      **Standing**

One necessary condition for a case to come within this Court's limited subject-matter jurisdiction is that the plaintiff must have standing to pursue the case in federal court.  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017).  To have standing, the plaintiff ordinarily must have suffered an "injury in fact" that is "concrete and particularized," "actual or imminent," and "fairly . . . trace[able] to the challenged action of the defendant," which "likely" will be "redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (alterations in original) (first quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984); then quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); and then quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).  A party must have standing "for each claim that [it] press[es] and for each form of relief that [it] seek[s]."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  For a plaintiff to have standing to pursue "forward-looking" relief such as an injunction, a party must show that the plaintiff "face[s] 'a real and immediate threat of repeated injury.' "  *Murthy*, 603 U.S. at 58 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  The party asserting standing must show that each of these requirements is satisfied "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.

These standing requirements apply with equal force to a named plaintiff seeking to represent a class.  To have standing, class action plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (quoting *Simon*, 426 U.S. at 40 n.20); *see also TransUnion*, 594 U.S. at 431 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring))).

However, the Supreme Court has recognized a limited exception to the general rule that a party must personally have suffered a concrete injury to have standing. Under this exception, a membership organization has standing to "bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests [the organization] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The burden of establishing standing rests with "[t]he party invoking federal jurisdiction." *Lujan*, 504 U.S. at 561; *TransUnion*, 594 U.S. at 430–31. Therefore, when a defendant removes a case to federal court and seeks to proceed there over the plaintiff's objection, the burden of showing that the plaintiff has standing rests with the defendant. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020); *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022); *see also Gardner v. Erie Ins. Co.*, 639 F. Supp. 3d 135, 139 (D.D.C. 2022) (RC) (holding that the burden of establishing federal subject-matter jurisdiction over a removed action rests with "[t]he party opposing the motion to remand"); *cf. Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 289 (1st Cir. 2013) (noting that if the plaintiff chooses to go forward with the claim in federal court after removal, the burden of establishing standing then "rests with the plaintiff").

To establish standing, the party invoking federal jurisdiction "must explain how the elements essential to standing are met." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). "[S]imply alleg[ing] a nonobvious harm" is not sufficient. *Id.* "As a general matter, a plaintiff's standing to pursue a claim rests on the theory of injury presented in the complaint and the facts alleged in support of the claim." *Haase v. Sessions*, 835 F.2d 902, 907

11

(D.C. Cir. 1987) (citing *Warth v. Seldin*, 422 U.S. 490, 500–01 (1975)).  A defendant may rely on these allegations to show that the plaintiff has standing, even if the plaintiff insists that standing is absent.  *See Tailford*, 26 F.4th at 1099 n.2.  A defendant removing a case to federal court under CAFA may also supplement the plaintiff's allegations in its notice of removal, and the court must consider those allegations in its jurisdictional analysis.  *See Dart Cherokee*, 574 U.S. at 87–88; 28 U.S.C. § 1446(a).  Finally, a court may also "consider materials outside the pleadings" when determining whether it has jurisdiction over a removed case if the court "still 'accept[s] all of the factual allegations in [the] complaint as true.' "  *See Jerome Stevens Pharms., Inc. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (second alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("In determining standing, we may consider materials outside of the complaint.").

### III. DISCUSSION

Neither party disputes that Hyatt's Notice of Removal was timely or that this Court has statutory original jurisdiction under CAFA; on its face, the Notice of Removal shows that both of those jurisdictional requirements are satisfied.  *See* 28 U.S.C. §§ 1446(b)(2)(B), 1332(d); Notice of Removal ¶¶ 1, 14–33.  Therefore, the primary issue for the Court to resolve is whether Travelers United has standing to pursue its claims in federal court.  The discussion that follows begins by addressing that issue.  It then addresses the parties' other requests:  Hyatt's requests for jurisdictional discovery and Travelers United's request for attorney's fees and costs incurred because of the removal to this Court.  The Court concludes that Travelers United does not have standing, rejects Hyatt's requests for jurisdictional discovery, and rejects Travelers United's request for attorney's fees and costs.  This case shall be remanded to the D.C. Superior Court.

**A.  Because Travelers United Lacks Standing, This Case Shall Be Remanded.**

Because standing is an element of federal courts' subject-matter jurisdiction, this Court must consider whether the plaintiff has standing as a threshold issue, even if the case satisfies the prerequisites for a statutory grant of original jurisdiction like the one in CAFA.  *See Busic v. Transportation Sec. Admin.*, 62 F.4th 547, 549 (D.C. Cir. 2023); *Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 107 (D.D.C. 2016) (RC), *aff'd sub nom. Tanner-Brown v. Zinke*, 709 F. App'x 17 (D.C. Cir. 2017).  If standing is absent, then the Court lacks subject-matter jurisdiction and the case must be remanded.  *See Busic*, 62 F.4th at 549; 28 U.S.C. § 1447(c).

There are two ways that an organization like Travelers United can have standing to sue in federal court.  *See Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006).  First, an organization can have standing "on its own behalf," which is called "organizational standing."  *Id.* (citing  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378– 79 (1982); and *Warth*, 422 U.S. at 511).  Second, an organization can have standing to advance a claim "on behalf of its members," which is called "associational standing."  *Id.* (citing  *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996); and *Hunt*, 432 U.S. at 343); *Elec. Priv. Info. Ctr. v. United States Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019).

Hyatt argues that Travelers United has both organizational standing and associational standing in this case.  Defs.' Opp'n at 13–17.  Travelers United denies that it has either form of standing.  Pl.'s Reply at 10–14.  The Court agrees with Travelers United that it has neither organizational standing nor associational standing to pursue its claims in federal court.

       1.    <u>Organizational Standing</u>

To have standing "in its own right," an organization must make "the same showing required of individuals:  an actual or threatened injury in fact that is fairly traceable to the defendant's

allegedly unlawful conduct and likely to be redressed by a favorable court decision." *Am. Anti-Vivisection Soc'y v. United States Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020) (first quoting *Abigail All.*, 469 F.3d at 132; and then quoting *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011)). "To demonstrate injury in fact, an organization must allege a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'" *Id.* (quoting *Havens*, 455 U.S. at 379).

Hyatt argues that Travelers United has alleged an injury to itself in at least two ways. *See* Defs.' Opp'n at 8–15. First, Hyatt argues that Travelers United alleged such an injury by asserting that its claims are "typical, if not identical to" the claims of putative class members, who Travelers United alleges suffered actual injuries when they paid so-called "junk fees" to Hyatt. *Id.* at 9 (quoting Compl. ¶ 94). Second, Hyatt argues that Travelers United has alleged an injury by asserting that it has expended resources to combat the fee practices at issue in this case, which are contrary to Travelers United's stated mission. *Id.* at 13 (citing Compl. ¶¶ 13–14).

Neither of Hyatt's arguments for organizational standing is successful. An allegation under D.C. class action law that a lead plaintiff's claims are "typical" of putative class members' damages claims, without more, does not confer Article III standing. *See infra*, Section III.A.1.a. The mere expenditure of resources to research and advocate against the practices at issue in a case does not confer standing, either. *See infra*, Section III.A.1.b. Travelers United therefore lacks organizational standing in this case.

a.    *Typicality*

Hyatt's first argument in favor of Travelers United's standing hinges on the meaning of the word "typical." Hyatt argues that by asserting that its claims "are 'typical' of the 'actual damages' claims of putative class members," Travelers United has, in effect, alleged that it "was harmed in

14

a manner similar to the class" and therefore suffered damages. Defs.' Opp'n at 12. This assertion, Hyatt contends, "must be accepted as true for jurisdictional purposes" and establishes that Travelers United has standing. *Id.*

Hyatt's argument that Travelers United has standing on this basis is unpersuasive, for three reasons.

*First*, context makes clear that Travelers United's assertion that its claims are "typical" of class members' claims is a legal conclusion about a matter of D.C. class action law, not a factual allegation. *See* Compl. ¶ 94. Travelers United raises this assertion in a section of its Complaint entitled "Class Allegations." *See id.* ¶¶ 83–96. The first paragraph of that section alleges that this action "is brought and may properly proceed as a class action pursuant to D.C. Rule of Civil Procedure 23." *Id.* ¶ 83. One of the class certification requirements in that rule, as in the analogous federal rule, is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." D.C. Super. Ct. R. Civ. P. 23(a)(3); *cf.* Fed. R. Civ. P. 23(a)(3). And the specific paragraph in which Travelers United describes its claims as "typical" begins with the heading "Typicality" and cites precedent from this District applying the analogous federal class-certification requirement that a representative party's claims be "typical" of the claims of the class. Compl. ¶ 94 (citing *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 40 (D.D.C. 2017) (ESH)). Taken together, these facts show that Travelers United's assertion that its claims are "typical" of those of the class is a legal conclusion, not a factual allegation.

Because Travelers United's assertion of typicality is a legal conclusion, Hyatt's contention that the assertion "must be accepted as true for jurisdictional purposes" is mistaken. *See* Defs.' Opp'n at 12. "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing at the pleading stage. *Lujan*, 504 U.S. at 561. But in contrast to the

treatment of factual allegations, courts "do not assume the truth of legal conclusions" set forth in a plaintiff's complaint when assessing standing. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (explaining that courts do not accept the truth of "legal conclusions," even when they are "cast in the form of factual allegations" (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994))). Courts also do not "accept inferences that are unsupported by the facts set out in the complaint." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). Instead, to establish federal jurisdiction, the pleadings "must contain sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face.' " *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Measured against these standards, the bare legal assertion that Travelers United's claims are "typical" of those of class members, without more, is not an allegation of an injury-in-fact that is sufficient to support standing.

*Second*, even if the Court were to accept, for purposes of the standing analysis, the legal conclusion that Travelers United's claims are "typical" of those of other class members as a matter of D.C. class action law, that conclusion alone would not support a determination that Travelers United has standing in federal court. Although the D.C. Court of Appeals has not yet decided whether a CPPA plaintiff must have suffered a direct injury for that plaintiff's claims to be "typical" of the claims of class members who did suffer such injuries for purposes of D.C. Rule 23, a recent D.C. Superior Court decision in another case brought by Travelers United suggests that D.C. Rule 23 does not impose such a requirement.

In *Travelers United, Inc. v. Sonesta Int'l Hotels Corp.*, No. 2023 CAB 5254, 2024 D.C. Super. LEXIS 38 (D.C. Super. Ct. Dec. 5, 2024), Judge Todd E. Edelman granted a class

certification motion in a case in which Travelers United advances CPPA claims that parallel the claims in this case. *Id.* at *43. In *Sonesta*, as in this case, Travelers United alleges that the defendant hotel corporation has violated the CPPA by charging improper fees to consumers. *Id.* at *2–3. And as in this case, Travelers United maintains that it has not suffered an injury to its own interests, but instead is suing under the CPPA purely as a representative of D.C. consumers who have paid the challenged fees. *Id.* at *1–2.

On those facts, Judge Edelman concluded that Travelers United "sufficiently stands in the shoes" of the consumer class members that it is a "member[] of the class" entitled to sue in a representative capacity under D.C. Rule 23, even though Travelers United was not alleging any injury to its own interests. *Id.* at *25; *see* D.C. Super. Ct. R. Civ. P. 23(a) ("One or more *members of a class* may sue or be sued as representative parties on behalf of all members only if . . . ." (emphasis added)). Judge Edelman further concluded that Travelers United had satisfied the requirement that its claims must be "typical" of those of class members, even though it had alleged no injury to itself, because the CPPA allows Travelers United to "stand[] in the shoes" of injured class members, most or all of whom who suffered injury "in the same manner." 2024 D.C. Super. LEXIS 38 at *30.

Judge Edelman acknowledged Sonesta's argument that these conclusions were in tension with federal class action precedent suggesting that the lead plaintiff in a class action must "possess the same interest and suffer the same injury" as class members. *Id.* at *19 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). But he reasoned that the local courts of D.C. are not bound to follow federal precedent on that issue because the relevant federal decisions reflect "Article III constraints" on federal class-action jurisdiction that do not apply to the local courts of D.C., which Congress established using its Article I powers. *Id.* at *20 (quoting *Amchem Prods.*

*v. Windsor*, 521 U.S. 591, 613 (1997)).  Because the D.C. Court of Appeals has held that "public interest organizations bringing suit under [the CPPA provision at issue here] [are] free from any requirement to demonstrate their own Article III standing," Judge Edelman reasoned, these Article III-related obstacles to class certification in federal court are not applicable in CPPA cases in which a public interest organization sues in D.C. Superior Court on behalf of injured consumers.  *Id* at *22 (second alteration in original) (quoting *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 184 (D.C. 2021)).

The *Sonesta* decision supports the conclusion that, as a matter of D.C. class action law, a public interest organization may have claims that are "typical" of the claims of injured consumer class members even if the organization has not suffered an injury that would support federal standing under Article III.  *See id.* at *29–30; *cf. Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").  Accordingly, even if this Court were to accept as true the assertion that, as a matter of D.C. law, Travelers United has claims that are "typical" of the claims of class members who suffered actual injuries, that assertion would not provide a stand-alone basis for concluding that Travelers United has standing in federal court.

*Third*, and finally, Travelers United has not alleged any facts that plausibly show how it could have been directly "harmed in a manner similar to the class."  *See* Defs.' Opp'n at 12. Travelers United alleges that "[c]lass members suffered actual injuries" when they paid mandatory fees for hotel rooms that "were not included in the advertised price" of those rooms.  Compl. ¶ 108. But Travelers United does not allege that it is a member of the class that suffered these injuries or that it ever paid fees directly to Hyatt.  *Cf.* ¶¶ 84–85 (proposing classes composed of "individuals" and "residents of the District of Columbia" who "booked a room at a Hyatt hotel . . . for personal use and paid a resort, destination, and/or similar fee to Hyatt").  In the absence of those allegations,

an assertion that Travelers United's claims are "typical" of the claims of others who suffered "actual damages" is not sufficient to show an injury in fact.  *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (per curiam) ("A mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing.").

For all these reasons, the Court rejects Hyatt's argument that Travelers United has standing based on its allegation that its claims are "typical" of claims by class members who it alleges have suffered actual injuries.

b.    *Expenditure of Resources*

Next, Hyatt argues that Travelers United has organizational standing because the allegations in this case show that the fee-charging practices at issue are contrary to Travelers United's mission and those practices have caused Travelers United to expend resources that it otherwise would have expended on other efforts.  Defs.' Opp'n at 13–15.  This argument, too, is unsuccessful.

Hyatt relies for this argument on the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  *See* Defs.' Opp'n at 13.  In that case, the Supreme Court considered whether an organization that provided "counseling and referral services for low-and moderate-income homeseekers" had standing to challenge discriminatory housing practices that the organization alleged had "perceptibly impaired" its ability to provide its services.  *Havens*, 455 U.S. at 379.  In its opinion, the Court emphasized that the alleged interference with the organization's services was "far more than simply a setback to the organization's abstract social interests."  *Id.*  Instead, it was a "concrete and demonstrable injury to the organization's activities" that resulted in a "drain on the organization's resources."  *Id.*  On those facts, the Court concluded that the organization had standing to challenge the discriminatory practices at issue.  *Id.*

However, as the Supreme Court recently emphasized in *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), "*Havens* was an unusual case," and the Court "has been careful not to extend the *Havens* holding beyond its context." *Id.* at 396. "Critically," the Court explained, the organizational plaintiff in *Havens* was not only "an issue-advocacy organization," but also a provider of "a housing counseling service." *Id.* at 395. The Court went on to explain that the organization's standing in *Havens* arose not from any harm to its abstract social objectives, but rather from an injury to "core business activities" like its counseling service. *Id.*

Applying that understanding of the holding in *Havens*, the Court held in *Alliance for Hippocratic Medicine* that several medical associations lacked organizational standing to challenge the Food and Drug Administration's approval of mifepristone, a drug used to perform abortions. *Id.* The Court acknowledged the medical associations' allegations that the agency's actions had caused them to expend "considerable resources" on research, advocacy, and public education related to mifepristone and abortion. *Id.* at 394. But it held that under Article III, an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.*

So too here. The allegations in this case demonstrate that Travelers United, like the medical associations that lacked standing in *Alliance for Hippocratic Medicine* and unlike the plaintiff organization that had standing in *Havens*, is principally "an issue-advocacy organization." *See id.* at 395; Compl. ¶¶ 13–14. The additional evidence of Travelers United's activities that Hyatt offers in its Opposition only reinforces this conclusion. *See* Defs.' Opp'n at 14–15; Decl. of Lindsay Harrison ("Harrison Decl."), ECF No. 12-1, ¶¶ 3–5, Exs. A–E. Relying on information from Travelers United's public website and financial reports, Hyatt describes the range of policy

advocacy activities that Travelers United has undertaken in its fight against "junk fees," including giving testimony before Congress, providing comments in Department of Transportation rulemaking proceedings, and meeting with staff of federal agencies and congressional committees. Defs.' Opp'n at 14.  Hyatt also describes Travelers United's educational and research activities, which include publishing a newsletter, producing instructional videos, and conducting surveys. *Id.*  But Hyatt does not identify any "core business activities" undertaken by Travelers United that are plausibly hampered by the conduct challenged in this case.  *See All. for Hippocratic Med.*, 602 U.S. at 395.  Instead, Hyatt merely identifies several kinds of research and issue advocacy activities that are responsive to, but not directly impaired by, the practices challenged in this case.  Like the medical organizations that lacked standing in *Alliance for Hippocratic Medicine*, Travelers United "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."  *Id.* at 395.  Accordingly, Travelers United's research and advocacy activities, without more, do not show that it has organizational standing.

The two decisions of the U.S. Court of Appeals for the D.C. Circuit that Hyatt cites are not to the contrary.  *See* Defs.' Opp'n at 13–15 (citing *Equal Rights Ctr. v. Post Props, Inc.*, 633 F.3d 1136, 1138, 1140 (D.C. Cir. 2011); and *Fair Emp. Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994)).  Relying on these two decisions, Hyatt argues that any organization that has used its resources to "counteract" a practice that is contrary to its mission has standing to challenge that practice.  *See id.*  Not so.  Just as the Supreme Court did in *Alliance for Hippocratic Medicine*, the D.C. Circuit made clear in each of the decisions Hyatt cites that only certain kinds of efforts to "counteract" challenged conduct will support organizational standing.  *See Equal Rights Ctr.*, 633 F.3d at 1142; *Fair Emp. Council*, 28 F.3d at 1276–77.  In both decisions, the D.C. Circuit concluded that efforts by civil rights organizations to investigate

discriminatory practices and "increas[e] legal pressure" on the defendants to change those practices were not sufficient to confer standing. *See Fair Emp. Council*, 28 F.3d at 1276–77; *Equal Rights Ctr.*, 633 F.3d at 1142 (quoting *id.*). If the rule were otherwise, "the time and money that plaintiffs spend in bringing suit against a defendant would itself constitute a sufficient 'injury in fact,' a circular position that would effectively abolish the [standing] requirement altogether." *Fair Emp. Council*, 28 F.3d at 1277. Instead, in the decisions that Hyatt cites, the D.C. Circuit analyzed standing by focusing on whether the defendant's conduct prompted the plaintiff organizations to divert resources toward providing additional *direct services* designed to offset the harmful effects of the challenged conduct. *See id.* at 1277 (distinguishing expenditures of resources on an organization's core service programs, which can support standing, from expenditures on "the allied efforts at increasing legal pressure on civil-rights violators," which cannot); *Equal Rights Ctr.*, 633 F.3d at 1141–42 & n.4 (analyzing standing by focusing on the "diversion of resources to programs designed to counteract the injury," including "increased educational and counseling efforts"). These decisions are therefore consistent with the Supreme Court's more recent holding in *Alliance for Hippocratic Medicine* that expenditures on investigations and advocacy alone are not sufficient to confer standing. *See* 602 U.S. at 395.

In sum, Hyatt has not shown that the fee practices challenged in this case have "perceptibly impaired" Travelers United's ability to provide relevant services aligned with its mission. *Havens*, 455 U.S. at 379. Travelers United therefore lacks organizational standing to challenge the practices at issue in this case on its own behalf.

### 2.   Associational Standing

Even if an organization lacks standing to pursue a claim on its own behalf, it may have associational standing to sue on behalf of its members. This path to standing is always available to a "voluntary membership organization with identifiable members" that "represents [its

members] in good faith." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023). An organization not meeting that description may also have associational standing, but to do so, it "must have" at least "the 'indicia of a traditional membership association.' " *Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022) (quoting *Sorenson Commc'ns v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018)); *see also Hunt*, 432 U.S. at 343. When determining whether these "indicia" are present, courts weigh multiple "considerations," including "whether members finance the organization, guide its activities, or select its leadership." *Id.* "[I]t is not enough for putative members simply to read a group's publications, subscribe to its e-mail list, or follow its Facebook page." *Id.* (citing *Sorenson*, 897 F.3d at 225; and *Gettman v. DEA.*, 290 F.3d 430, 435 (D.C. Cir. 2002)). If the party that bears "the burden of proof" on the issue of standing fails to show that these indicia are present, a federal court should not proceed based on associational standing. *Id.*

If these threshold requirements are satisfied, a party may show that an organization has associational standing by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests [the organization] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343; *Elec. Priv. Info. Ctr.*, 928 F.3d at 101. The first two prongs of this test are constitutional requirements rooted in Article III; the third is prudential, and Congress may modify it through legislation. *See United Food & Com. Workers Union*, 517 U.S. at 556–57; *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024). But all three requirements are jurisdictional, and unless each is satisfied—or, in the case of the third requirement, abrogated by an act of Congress—associational standing is not a valid basis for a federal court's exercise of subject-matter jurisdiction over the case. *See Tanner-*

*Brown*, 105 F.4th at 447; *see also Arpaio*, 797 F.3d at 19 (noting that standing is an element of the court's subject-matter jurisdiction).

Hyatt argues that information on Travelers United's website shows that it is a membership organization and that the allegations in its Complaint support a plausible inference that each of the other three requirements for associational standing are satisfied.  *See* Opp'n at 15–17; Harrison Decl. ¶¶ 3–5, Ex. A.  The Court will assume, without deciding, that Travelers United is a voluntary membership organization, that at least one of its members is a travelling consumer who would have standing to advance the damages claims in this case as an individual plaintiff, and that the interests that Travelers United "seeks to protect" in this case are "germane to the organization's purpose."  *See United Food & Com. Workers Union*, 517 U.S. at 556–57; Compl. ¶ 12 ("The mission of Travelers United is to improve and enhance travel for consumers. . . .").  Each of these facts either can be inferred from the allegations in the Complaint or the Notice of Removal or could plausibly be established through jurisdictional discovery.  And collectively, these facts would satisfy the first and second prongs of the associational standing test.  The Court's analysis will therefore focus on the remaining prong of that test: the "member-participation" prong.

One purpose of the member-participation prong of the associational standing test is to "guard against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity."  *United Food & Com. Workers Union*, 517 U.S. at 556.  Accordingly, although "a request for monetary relief by an association does not *absolutely* preclude standing in all cases, the question in each case is whether the monetary relief can be awarded without 'individualized proof.' "  *Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 484 (D.C. Cir. 1996) (quoting *Warth*, 422 U.S. at 515–16).  If such proof is required to resolve a claim—whether monetary or not—the member-participation prong

is not satisfied. *See id.*; *Warth*, 422 U.S. at 515–16 (declining to recognize associational standing to pursue a damages claim when "both the fact and extent of injury would require individualized proof"); *Tanner-Brown*, 105 F.4th at 447 (declining to recognize associational standing to pursue a claim for an accounting that would require "individualized determinations"); *cf. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287–88 (1986) (recognizing associational standing where the claim "raise[d] a pure question of law" and any individualized determinations regarding appropriate remedies for members would be made by "the proper state authorities"). The plaintiff then lacks associational standing to proceed in federal court unless Congress has, by statute, abrogated the member-participation prong for the claim at issue. *See United Food & Com. Workers Union*, 517 U.S. at 556–57; *Tanner-Brown*, 105 F.4th at 447.

Congress has not abrogated the member-participation prong for the claims at issue here. The Supreme Court has recognized that Congress may remove this requirement, for example by authorizing an association to sue in federal court for damages on its members' behalf. *See United Food & Com. Workers Union*, 517 U.S. at 558. Neither of the two statutes at issue in this case alters the member-participation requirement in this way.

*First*, the CPPA provision creating Travelers United's cause of action and giving it the right to sue for damages on behalf of individual consumers does not abrogate the member-participation requirement for associational standing because it is an act of the D.C. Council, not of Congress. *See* D.C. Code § 28-3905(k)(1)(D); Compl. ¶ 100. The jurisdiction of the federal district courts is within the sole control of Congress, subject only to those limits imposed by the Constitution. *See Mark v. Republic of the Sudan*, 77 F.4th 892, 896 (D.C. Cir. 2023), *cert. denied*,

144 S. Ct. 1456 (2024).  Therefore, the D.C. Council enactment under which Travelers United sued in this case cannot abrogate the member-participation requirement.  *See id.*

*Second*, CAFA does not abrogate the member-participation requirement for associational standing because it does not purport to give any association the power to seek relief on behalf of its members without their participation.  *See* 28 U.S.C. § 1332(d).  Instead, it merely authorizes federal district courts to exercise original jurisdiction over certain putative class actions, regardless of the relationship between the named representative and the putative class.  *See id.*  That authorization does not alter the member-participation prong of the test for associational standing. *See id.*  To the contrary, multiple courts have applied the member-participation prong when analyzing the standing of plaintiffs in putative class actions proceeding in federal court under CAFA.  *See, e.g.*, *Coll. of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 40–41 (1st Cir. 2009); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004). As these decisions indicate, CAFA does not abrogate the member-participation prong of the test for associational standing.

Because the member-participation prong has not been abrogated for the claims at issue in this case, the Court must apply that prong and decide whether either "the claim[s] asserted" or "the relief requested requires the participation of individual members" of Travelers United in this action.  *See Hunt*, 432 U.S. at 343.  If "detailed and individualized proof" from individual members is required, then Travelers United lacks associational standing.  *See Air Transp.*, 80 F.3d at 484.

At the threshold, the Court rejects Hyatt's argument that Travelers United's decision to pursue this case as a putative class action under D.C. Rule 23 satisfies the member-participation prong.  *See* Defs.' Opp'n at 16.  The U.S. Court of Appeals for the Second Circuit has rejected a similar argument, concluding that the rule against associational standing for claims requiring

individual member participation should not be relaxed in putative class actions. *See Bano*, 361

F.3d at 715. As that court explained:

> Associational standing carves only a narrow exception from the ordinary rule that
> a litigant "must assert his own legal rights and interests, and cannot rest his claim
> to relief on the legal rights or interests of third parties." If the involvement of
> individual members of an association is necessary, either because the substantive
> nature of the claim or the form of the relief sought requires their participation, we
> see no sound reason to allow the organization standing to press their claims, even
> where it seeks to do so as a putative class representative.

*Id.* (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State,*

*Inc.*, 454 U.S. 464, 474 (1982)). This Court agrees with the Second Circuit's reasoning and

concludes that a plaintiff's decision to pursue a case as a putative class action does not satisfy the

member-participation prong.

The Court therefore proceeds to assess each claim and form of relief that Travelers United

seeks, evaluating whether individual members' participation would be required to resolve each

one. *See TransUnion*, 594 U.S. at 431 (holding that a party must have standing "for each claim

that [it] press[es] and for each form of relief that [it] seek[s]"). The Court concludes that in each

instance, individual members' participation would be required, precluding the recognition of

associational standing.

*First*, adjudicating Travelers United's claims for actual damages would require individual

members' participation in this case. *See* Compl. ¶ 111(c). Some evidence relevant to individual

members' actual damages is likely in the possession of those members, not Travelers United or

Hyatt. For example, suppose that an individual traveler's actual damages include the difference

between the price that the individual paid for a Hyatt hotel room and the price of a similar hotel

room that the individual would have booked if not for the fee practices at issue in this case.

Although Hyatt may have discoverable records that would show the amount that the individual

27

ultimately paid to the Hyatt hotel, it is unlikely that either Hyatt or Travelers United would have records indicating what other, non-Hyatt hotels the individual may have considered or what their prices were at the relevant times.  Instead, the most likely source of that information would be the individual traveler's record.  The need for this kind of "detailed and individualized proof" from individual members of Travelers United bars the recognition of associational standing over the actual damages claims in this case.  *See Air Transp.*, 80 F.3d at 484.

*Second*, for a similar reason, evaluating Travelers United's claims for either treble damages or statutory damages of $1,500 per violation would require individual members' participation in this case.  *See* Compl. ¶ 111(d).  The CPPA provides for the award of either treble damages "*or*" statutory damages, "whichever is greater."  D.C. Code 28-3905(k)(2)(A) (emphasis added).  This statutory scheme makes it necessary for the Court to consider evidence of individual members' actual damages before awarding statutory damages.  Failing to do so would prejudice any individual claimant who suffered more than $500 in actual damages from a single violation, entitling them to more than the statutory amount of $1,500 as treble damages.[3]  The Court therefore must consider some "detailed and individualized proof" to resolve these claims, meaning that Travelers United lacks associational standing to pursue them.  *See Air Transp.*, 80 F.3d at 484.

*Third*, adjudicating Travelers United's claim for punitive damages would require individual members' participation in this case because any award of punitive damages must be proportionate to a corresponding award of compensatory damages.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003); *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d

---

[3] Such extensive individual damages may be unlikely if the Court accepts Travelers United's assertion that "[e]ach night that Hyatt charged Junk Fees constitutes a violation of the CPPA."  *See* Compl. ¶ 109.  But this assertion is a legal conclusion, not a factual allegation, and the Court is not required to accept it as true.  *See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d at 54.  For example, the Court could conclude instead that all of Hyatt's representations to an individual consumer constitute a single collective violation.  Under that analysis, any individual who stayed at a Hyatt hotel for more than 25 nights in total since 2020 and paid $20 in "resort" or "destination" fees for each night could have a plausible claim for more than $500 in actual damages.  *See* Compl. ¶¶ 56–58 & n.26.

51, 82 (D.D.C. 2010) (RCL).  Because the Court has already concluded that it cannot fairly assess actual damages without considering "detailed and individualized proof" from individual members of Travelers United, it follows that the Court cannot assess a proportionate award of punitive damages without that same proof.  *See Air Transp.*, 80 F.3d at 484.

*Fourth*, resolving Travelers United's claims for injunctive relief will require individual members' participation in this case because without their participation, the Court will be unable to determine whether any of Travelers United's members has standing to pursue injunctions against Hyatt's alleged practices—and by extension, whether Travelers United has standing to pursue that relief on its members' behalf.  *See* Compl. ¶ 111(a)–(b); *Hunt*, 432 U.S. at 343 (requiring, as a condition of associational standing, that "members would otherwise have standing to sue in their own right").

To have standing to seek an injunction against Hyatt's alleged fee practices, a member of Travelers United would need to face "a real and immediate threat of repeated injury" from those practices.[4]  *Murthy*, 603 U.S. at 58 (quoting *O'Shea*, 414 U.S. at 496).  Establishing such a threat would require, at a minimum, an allegation that the member has a specific plan to book a Hyatt hotel room at a definite point in the future.  *See O'Shea*, 414 U.S. at 495–96 (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if  unaccompanied by any continuing, present adverse effects"); *Lujan*, 504 U.S. at 564 (holding that generalized " 'some day' intentions—without any description of concrete

---

[4] Notably, according to Travelers United's own allegations, some of the practices at issue stopped or changed "in and around August 2023," when Hyatt began advertising per-night prices for hotel rooms that include the relevant "destination fee."  *See id.* ¶ 72.  The only allegedly ongoing practice that Travelers United seeks to enjoin is Hyatt's practice of including the "destination fee" or "resort fee" under a "Taxes & Fees" heading in the itemized list of costs presented to consumers before they complete their transactions. *See id.* ¶¶ 72, 111(b).  Any claim of standing to pursue injunctive relief would therefore need to be related to a threat of injury from this allegedly ongoing practice, rather than Hyatt's alleged past practice of advertising per-night prices that excluded certain mandatory fees. *See O'Shea*, 414 U.S. at 495–96.

plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury" that is necessary to show Article III standing).

If Travelers United had intended to proceed in federal court, it may have been able to satisfy this requirement at the outset of the case with only minimal participation by its members. For example, Travelers United could have filed affidavits or declarations from some of those members stating that they plan to visit Hyatt hotels in the future. *Cf. Students for Fair Admissions*, 600 U.S. at 201 (relying in part on members' declarations to conclude that the plaintiff organization had associational standing); *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596–97 (D.C. Cir. 2015) (same). But Travelers United has not alleged or shown that *anyone*, let alone any of its own members, plans to book a Hyatt hotel room in the future. *See generally* Compl.

The absence of any allegation or showing by the plaintiff organization that an individual member has standing distinguishes this case from others in which courts have allowed organizations to pursue non-monetary relief on behalf of their individual members. For example, in *Center for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015), the D.C. Circuit held that an organization had associational standing to seek invalidation of an agency action where the plaintiff organization had already filed declarations by two of its members describing those members' ongoing interests in the places affected by the challenged action. *Id.* at 596–96. The court concluded that those declarations established that the individual members had standing to sue "in their own right," supporting the organization's associational standing. *Id.* Similarly, in *Equal Rights Center v. Uber Technologies, Inc.*, 525 F. Supp. 3d 62 (D.D.C. 2021) (KBJ), then-Judge Ketanji Brown Jackson held that a civil rights organization had associational standing to pursue declaratory and injunctive relief where the organization had already filed a declaration by a member showing that the member would have standing to pursue the case as an individual. *Id.*

at 81.  In this case, by contrast, the Court does not yet have any indication that any of Travelers United's members have standing to pursue injunctive relief.  Accordingly, if this case proceeds in federal court, this Court—unlike the courts in either *Center for Sustainable Economy* or *Equal Rights Center*—will eventually need to consider additional, member-specific facts to determine whether at least one member has standing to seek injunctive relief.  *See O'Shea*, 414 U.S. at 495–96; *Lujan*, 504 U.S. at 564; *Hunt*, 432 U.S. at 343.  As the party invoking federal jurisdiction, Hyatt would have the burden of identifying such a member, presumably through third-party discovery into the future travel plans of Travelers United's many members.  The necessity for that kind of "detailed and individualized proof"—to say nothing of the intrusive nature of the discovery necessary to produce it—precludes the recognition of associational standing as to Travelers United's claims for injunctive relief.  *See Air Transp.*, 80 F.3d at 484.

　　*Finally*, none of Travelers United's remaining claims for relief supports the recognition of associational standing here.  Travelers United requests "reasonable attorney's fees and costs," Compl. ¶ 111(f), but "[a] request for attorney's fees or costs cannot establish standing because those awards are merely a 'byproduct' of a suit that already succeeded, not a form of redressability."  *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).  Travelers United also requests "any additional relief as may be necessary" to compensate class members and "other and further relief as the Court finds necessary and proper," Compl. ¶ 111(g)–(h), but any such relief would inevitably require "detailed and individualized proof" from Travelers United's members, either to calculate a monetary award or to establish the organization's standing to pursue forward-looking remedies like declaratory or injunctive relief.  *Air Transp.*, 80 F.3d at 484.

In sum, the Court concludes that none of Travelers United's claims can proceed without the "participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Travelers United therefore lacks associational standing to pursue these claims in federal court. *See id*.

Because Travelers United does not have either organizational standing to sue on its own behalf or associational standing to sue on behalf of its members, this Court lacks subject-matter jurisdiction to adjudicate its claims. *See Busic*, 62 F.4th at 549; *accord Travelers United, Inc. v. Hilton Worldwide Holdings Inc.*, No. 23-cv-3584, 2024 U.S. Dist. LEXIS 101509, at *58–59 (D.D.C. June 7, 2024) (BAH). This case shall therefore be remanded to the D.C. Superior Court. *See* 28 U.S.C. § 1447(c).

### B.    Jurisdictional Discovery Is Not Warranted.

To support its arguments about standing, Hyatt requests that the Court allow it to conduct jurisdictional discovery regarding the extent to which Travelers United's claims are "typical" of those of other class members, the amount of its "financial expenditures related to the complained-of fees," and the identities of its members. *See* Defs.' Opp'n at 12 n.7, 15 n.8, 17 n.11. Travelers United opposes Hyatt's requests for jurisdictional discovery. *See* Pl.'s Reply at 12 n.5, 14 n.6. The Court agrees with Travelers United that jurisdictional discovery is not warranted and shall deny Hyatt's requests.

Federal district courts should permit a party to obtain jurisdictional discovery if "allegations indicate its likely utility" in determining a party's standing to pursue the case. *See Nat. Res. Def. Council v. Peña*, 147 F.3d 1012, 1024 (D.C. Cir. 1998). "[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 48 (D.C. Cir. 2020) (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000)). However, "the discovery request cannot be a 'fishing expedition.' " *Lewis v. Mutond*, 62 F.4th 587, 596 (D.C.

32

Cir. 2023) (quoting *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)).  And "[a] district court acts well within its discretion to deny discovery when no 'facts additional discovery could produce . . . would affect [the] jurisdictional analysis.' " *Id.* (second and third alterations in original) (quoting *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994)).

Jurisdictional discovery into the extent to which Travelers United's claims are "typical" of the "actual damages" claims of consumer class members is not warranted.  Hyatt has not shown any "likely utility" in jurisdictional discovery on this topic.  *See Nat. Res. Def. Council*, 147 F.3d at 1024.  In fact, it has not explained what relevant evidence, if any, might emerge from jurisdictional discovery on this issue.  *See* Defs.' Opp'n at 12 n.7.  In the absence of that kind of specificity, it appears likely that jurisdictional discovery on this topic would be an impermissible "fishing expedition."  *Lewis*, 62 F.4th at 596 (quoting *Bastin*, 104 F.3d at 1396).  Hyatt's request for discovery regarding the typicality of the plaintiff's claims shall be denied.

Similarly, jurisdictional discovery into the amount and purposes of Travelers United's expenditures is not warranted.  As the Supreme Court's recent decision in *Alliance for Hippocratic Medicine* makes clear, "no degree of expenditure . . . could create organizational standing" for an organization engaged solely in the kinds of research and issue-advocacy activities identified in the parties' pleadings and arguments.  *See* 602 U.S. at 394.  Therefore, "no 'facts additional discovery could produce . . . would affect [the] jurisdictional analysis' " regarding standing based on Travelers United's expenditures.  *Lewis*, 62 F.4th at 596 (alterations in original) (quoting *Goodman Holdings*, 26 F.3d at 1147).  The Court shall not permit jurisdictional discovery on this topic.

Finally, jurisdictional discovery is not warranted regarding the details of Travelers United's membership.  Hyatt requests this discovery to support its contention that "at least one of [Travelers

United]'s (presumably at least thousands of) members is also a putative class member." *See* Defs.' Opp'n at 17 n.11. But as the Court has already explained, even if at least one of Travelers United's members is also a member of at least one of the putative classes, Travelers United lacks associational standing because each of the claims and forms of relief requested in this case would "require[] the participation of individual members in the lawsuit" if the case were to proceed in federal court. *Hunt*, 432 U.S. at 343; *see supra*, Section III.A.2. Accordingly, additional facts about Travelers United's membership would not affect the jurisdictional analysis and Hyatt's request for jurisdictional discovery on this topic shall be denied. *See Lewis*, 62 F.4th at 596.

In sum, Hyatt has not shown that any form of jurisdictional discovery would produce evidence that would affect the Court's jurisdictional analysis. *See id.* Its requests for jurisdictional discovery shall therefore be denied.

## C.  Travelers United Is Not Entitled to Fees and Costs.

Finally, Travelers United requests an award of the attorney's fees and costs it has incurred because of the removal to federal court. Pl.'s Mem. at 11–12. The Court shall deny this request.

When the Court grants a motion to remand, it may award to the prevailing party attorney's fees and other "just costs" and "actual expenses" that the party "incurred as a result of the removal." 28 U.S.C. § 1447(c). But "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* A party has an "objectively reasonable basis" for removal when the "asserted basis for removal . . . has at least some logical and precedential force behind it." *See Knop v. Mackall*, 645 F.3d 381, 383 (D.C. Cir. 2011). Applying these standards, other courts in this District have declined to award attorney's fees under § 1447(c) unless there is "clear, controlling case law from the D.C. Circuit" refuting the removing

party's jurisdictional arguments.  *See, e.g.*, *Earth Island Inst. v. BlueTriton Brands*, 583 F. Supp. 3d 105, 112 (D.D.C. 2022) (JEB); *Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40, 47 (D.D.C. 2020) (DLF); *see also Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 172 (D.D.C. 2017) (denying request for fee award under § 1447(c) based on, among other factors, the "lack of controlling precedent in this Circuit").

Travelers United argues that an award of fees and costs is warranted here because Hyatt did not address standing in its removal papers, which Travelers United argues is "objectively unreasonable" and "contrary to well-settled law."  Pl.'s Mem. at 12.  But Travelers United cites no authority for the proposition that a defendant must affirmatively allege the plaintiff's standing in a notice of removal.  At least one federal district court has reached the opposite conclusion, holding that a defendant is not obligated to establish the plaintiff's standing in the notice of removal, but instead must do so only after the plaintiff has moved for remand to state court.  *See Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1221–22 (S.D. Fla. 2020).  In the absence of "clear, controlling case law from the D.C. Circuit" on this issue, the Court declines to find that Hyatt's failure to address standing in its Notice of Removal was objectively unreasonable.  *See Earth Island Inst.*, 583 F. Supp. 3d at 112.

Finally, as other courts in this District have recently recognized, the jurisdictional issues that arise when a membership organization sues as a "public interest organization" under the CPPA are often not so clear-cut that a defendant lacks "an objectively reasonable basis for seeking removal."  *See, e.g.*, *Travelers United, Inc. v. Hilton Worldwide Holdings Inc.*, No. 23-cv-3584, 2024 U.S. Dist. LEXIS 101509, at *59 n.14 (D.D.C. June 7, 2024) (BAH); *Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co.*, No. 24-cv-2356, 2024 WL 4817122, at *4 (D.D.C. Nov. 18, 2024) (JDB).  The same is true in this case.  Because there was "at least some logical and

precedential force behind" Hyatt's decision to remove this case to federal court under CAFA, the Court shall deny Travelers United's request for fees and costs. *See Knop*, 645 F.3d at 383.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Travelers United's Motion to Remand, **DENY** Hyatt's requests for jurisdictional discovery, and **DENY** Travelers United's request for attorney's fees and costs. The Court shall also **DENY AS MOOT** Hyatt's Motion to Transfer this case to the Northern District of Illinois. This case shall be **REMANDED** to the Superior Court of the District of Columbia. An appropriate Order accompanies this Memorandum Opinion.


**Dated:** January 3, 2025                    /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge